# COLORADO RIVER WATER CONSERVATION DISTRICT ET AL. *v.* UNITED STATES

No. 74–940.   Argued January 14, 1976—Decided March 24, 1976*

*Together with No. 74–949, *Akin et al.* v. *United States,* also on certiorari to the same court.

Brennan, J., delivered the opinion of the Court, in which Burger, C. J., and White, Marshall, Powell, and Rehnquist, JJ., joined. Stewart, J., filed a dissenting opinion, in which Blackmun and Stevens, JJ., joined, *post*, p. 821. Stevens, J., filed a dissenting opinion, *post*, p. 826.

*Kenneth Balcomb* argued the cause for petitioners in both cases. With him on the briefs were *J. D. MacFar-*

lane, Attorney General of Colorado, *Jean E. Dubofsky,* Deputy Attorney General, *Edward G. Donovan,* Solicitor General, *David W. Robbins,* First Assistant Attorney General, *Charles M. Elliott,* Special Assistant Attorney General, *Scott Balcomb, Robert L. McCarty, George L. Zoellner, Kenneth L. Broadhurst, Glenn G. Saunders, Charles J. Beise,* and *D. Monte Pascoe.*

*Howard E. Shapiro* argued the cause for the United States in both cases. With him on the brief were *Solicitor General Bork, Acting Assistant Attorney General Kiechel, Deputy Solicitor General Randolph, Edmund B. Clark,* and *Lawrence E. Shearer.*†

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The McCarran Amendment, 66 Stat. 560, 43 U. S. C. § 666, provides that "consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such

---

†A brief of *amici curiae* urging reversal in both cases was filed for their respective States by *Bruce Babbitt,* Attorney General of Arizona, *Evelle J. Younger,* Attorney General of California, *Wayne L. Kidwell,* Attorney General of Idaho, *Curt T. Schneider,* Attorney General of Kansas, *Robert L. Woodahl,* Attorney General of Montana, *Paul L. Douglas,* Attorney General of Nebraska, *Robert List,* Attorney General of Nevada, *Antonio Anaya,* Attorney General of New Mexico, *Allen I. Olson,* Attorney General of North Dakota, *Larry Derryberry,* Attorney General of Oklahoma, *R. Lee Johnson,* Attorney General of Oregon, *William J. Janklow,* Attorney General of South Dakota, *John L. Hill,* Attorney General of Texas, *Vernon B. Romney,* Attorney General of Utah, *Slade Gorton,* Attorney General of Washington, and *V. Frank Mendicino,* Attorney General of Wyoming.

Briefs of *amici curiae* urging affirmance in both cases were filed by *Richard A. Baenen, Marvin J. Sonosky,* and *R. Anthony Rogers* for the National Congress of American Indians, Inc., et al.; and by *Robert S. Pelcyger* for the Southern Ute Indian Tribe et al.

rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit." The questions presented by this case concern the effect of the McCarran Amendment upon the jurisdiction of the federal district courts under 28 U. S. C. § 1345 over suits for determination of water rights brought by the United States as trustee for certain Indian tribes and as owner of various non-Indian Government claims.[1]

---

[1] The McCarran Amendment (also known as the McCarran Water Rights Suit Act), 43 U. S. C. § 666, as codified, provides in full text:

"(a) Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided*, That no judgment for costs shall be entered against the United States in any such suit.

"(b) Summons or other process in any such suit shall be served upon the Attorney General or his designated representative.

"(c) Nothing in this Act shall be construed as authorizing the joinder of the United States in any suit or controversy in the Supreme Court of the United States involving the right of States to the use of the water of any interstate stream."

See also *infra*, at 807.

Title 28 U. S. C. § 1345 provides:

"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or

## I

It is probable that no problem of the Southwest section of the Nation is more critical than that of scarcity of water. As southwestern populations have grown, conflicting claims to this scarce resource have increased. To meet these claims, several Southwestern States have established elaborate procedures for allocation of water and adjudication of conflicting claims to that resource.[2] In 1969, Colorado enacted its Water Rights Determination and Administration Act[3] in an effort to revamp its legal procedures for determining claims to water within the State.

Under the Colorado Act, the State is divided into seven Water Divisions, each Division encompassing one or more entire drainage basins for the larger rivers in Colorado.[4] Adjudication of water claims within each Division occurs on a continuous basis.[5] Each month, Water Referees in each Division rule on applications for water rights filed within the preceding five months or refer those applications to the Water Judge of their Division.[6] Every six months, the Water Judge passes on referred applications and contested decisions by Referees.[7] A State Engineer and engineers for each Division are responsible for the administration and dis-

---

proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

[2] See, e. g., Ariz. Rev. Stat. Ann. §§ 45–102 to 45–106, 45–141 to 45–154, 45–180 to 45–193, 45–231 to 45–245 (1956 and Supp. 1975); Cal. Water Code §§ 174–192, 1000–5108 (1971 and Supp. 1976); Nev. Rev. Stat. § 533.010 et seq. (1973); N. M. Stat. Ann. §§ 75–1–1 to 75–6–3 (1968 and Supp. 1975).

[3] Colo. Rev. Stat. Ann. § 37–92–101 et seq. (1974).

[4] § 37–92–201.

[5] See §§ 37–92–302 to 37–92–303.

[6] § 37–92–303.

[7] § 37–92–304.

tribution of the waters of the State according to the determinations in each Division.[8]

Colorado applies the doctrine of prior appropriation in establishing rights to the use of water.[9] Under that doctrine, one acquires a right to water by diverting it from its natural source and applying it to some beneficial use. Continued beneficial use of the water is required in order to maintain the right. In periods of shortage, priority among confirmed rights is determined according to the date of initial diversion.[10]

The reserved rights of the United States extend to Indian reservations, *Winters* v. *United States,* 207 U. S. 564 (1908), and other federal lands, such as national parks and forests, *Arizona* v. *California,* 373 U. S. 546 (1963). The reserved rights claimed by the United States in this case affect waters within Colorado Water Division No. 7. On November 14, 1972, the Government instituted this suit in the United States District Court for the District of Colorado, invoking the court's jurisdiction under 28 U. S. C. § 1345. The District Court is located in Denver, some 300 miles from Division 7. The suit, against some 1,000 water users, sought declaration of the Government's rights to waters in certain rivers and their tributaries located in Division 7. In the suit, the Government asserted reserved rights on its own behalf and on behalf of certain Indian tribes, as well as rights based on state law. It sought appointment of a water master to administer any waters decreed to the United States.

---

[8] § 37–92–301.

[9] Colo. Const. Art. XVI, §§ 5, 6; Colo. Rev. Stat. Ann. §§ 37–92–102 to 37–92–306 (1974); *Coffin* v. *Left Hand Ditch Co.,* 6 Colo. 443 (1882).

[10] See *City of Colorado Springs* v. *Bender,* 148 Colo. 458, 366 P. 2d 552 (1961); *City of Colorado Springs* v. *Yust,* 126 Colo. 289; 249 P. 2d 151 (1952).

Prior to institution of this suit, the Government had pursued adjudication of non-Indian reserved rights and other water claims based on state law in Water Divisions 4, 5, and 6, and the Government continues to participate fully in those Divisions.

Shortly after the federal suit was commenced, one of the defendants in that suit filed an application in the state court for Division 7, seeking an order directing service of process on the United States in order to make it a party to proceedings in Division 7 for the purpose of adjudicating all of the Government's claims, both state and federal. On January 3, 1973, the United States was served pursuant to authority of the McCarran Amendment. Several defendants and intervenors in the federal proceeding then filed a motion in the District Court to dismiss on the ground that under the Amendment, the court was without jurisdiction to determine federal water rights. Without deciding the jurisdictional question, the District Court, on June 21, 1973, granted the motion in an unreported oral opinion stating that the doctrine of abstention required deference to the proceedings in Division 7. On appeal, the Court of Appeals for the Tenth Circuit reversed, *United States* v. *Akin*, 504 F. 2d 115 (1974), holding that the suit of the United States was within district-court jurisdiction under 28 U. S. C. § 1345, and that abstention was inappropriate. We granted certiorari to consider the important questions of whether the McCarran Amendment terminated jurisdiction of federal courts to adjudicate federal water rights and whether, if that jurisdiction was not terminated, the District Court's dismissal in this case was nevertheless appropriate. 421 U. S. 946 (1975). We reverse.

## II

We first consider the question of district-court jurisdiction under 28 U. S. C. § 1345. That section provides

that the district courts shall have original jurisdiction over all civil actions brought by the Federal Government "[e]xcept as otherwise provided by Act of Congress." It is thus necessary to examine whether the McCarran Amendment is such an Act of Congress excepting jurisdiction under § 1345.

The McCarran Amendment does not by its terms, at least, indicate any repeal of jurisdiction under § 1345. Indeed, subsection (d) of the Amendment, which is uncodified, provides:

> "(d)·None of the funds appropriated by this title may be used in the preparation or prosecution of the suit in the United States District Court for the Southern District of California, Southern Division, by the United States of America against Fallbrook Public Utility District, a public service corporation of the State of California, and others." Act of July 10, 1952, Pub. L. 495, § 208 (d), 66 Stat. 560.

In prohibiting the use of funds for the maintenance by the United States of a specific suit then pending in a District Court, subsection (d) plainly implies that the Amendment did not repeal the jurisdiction of district courts under § 1345 to adjudicate suits brought by the United States for adjudication of claimed federal water rights.[11]

Beyond its terms, the legislative history of the Amendment evidences no clear purpose to terminate any portion of § 1345 jurisdiction. Indeed, three bills, proposed at approximately the same time as the Amendment, which expressly would have had the effect of precluding suits by the United States in district court for the determina-

---

[11] Jurisdiction in the specific District Court suit was based on 28 U. S. C. § 1345. See *United States* v. *Fallbrook Util. Dist.,* 101 F. Supp. 298 (SD Cal. 1951).

tion of water rights, failed of passage.[12] Further, the Senate report on the Amendment states: "The purpose of the proposed legislation, as amended, is to permit the joinder of the United States as a party defendant in any suit for the adjudication of rights to the use of water . . . ." [13] Nothing in this statement of purpose indicates an intent correlatively to diminish federal-district-court jurisdiction. Similarly, Senator McCarran, who introduced the legislation in the Senate, stated in a letter made a part of the Senate report that the legislation was "not intended to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream." [14]

In view of the McCarran Amendment's language and legislative history, controlling principles of statutory construction require the conclusion that the Amendment did not constitute an exception "provided by Act of Congress" that repealed the jurisdiction of district courts under § 1345 to entertain federal water suits. "When there are statutes clearly defining the jurisdiction of the courts the force and effect of such provisions should not be disturbed by a mere implication flowing from subsequent legislation." *Rosencrans* v. *United States,* 165 U. S. 257, 262 (1897). See *Morton* v. *Mancari,* 417 U. S. 535, 549–551 (1974); *United States* v. *Jackson,* 302 U. S. 628, 632 (1938). "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton* v. *Mancari, supra,* at 550. Not only do the terms and legislative

---

[12] H. R. 7691, 82d Cong., 2d Sess. (1952); H. R. 5735, 82d Cong., 1st Sess. (1951); H. R. 5368, 82d Cong., 1st Sess. (1951).

[13] S. Rep. No. 755, 82d Cong., 1st Sess., 2 (1951).

[14] *Id.,* at 9.

history of the McCarran Amendment not indicate an intent to repeal § 1345, but also there is no irreconcilability in the operation of both statutes. The immediate effect of the Amendment is to give consent to jurisdiction in the state courts concurrent with jurisdiction in the federal courts over controversies involving federal rights to the use of water. There is no irreconcilability in the existence of concurrent state and federal jurisdiction. Such concurrency has, for example, long existed under federal diversity jurisdiction. Accordingly, we hold that the McCarran Amendment in no way diminished federal-district-court jurisdiction under § 1345 and that the District Court had jurisdiction to hear this case.[15]

## III

We turn next to the question whether this suit nevertheless was properly dismissed in view of the concurrent state proceedings in Division 7.

## A

First, we consider whether the McCarran Amendment provided consent to determine federal reserved rights held on behalf of Indians in state court. This is a question not previously squarely addressed by this Court, and given the claims for Indian water rights in this case, dismissal clearly would have been inappropriate if the state court had no jurisdiction to decide those claims. We conclude that the state court had jurisdiction over Indian water rights under the Amendment.

*United States* v. *District Court for Eagle County*, 401 U. S. 520 (1971), and *United States* v. *District Court for*

---

[15] The District Court also would have had jurisdiction of this suit under the general federal-question jurisdiction of 28 U. S. C. § 1331. For the same reasons, the McCarran Amendment did not affect jurisdiction under § 1331 either.

*Water Div. 5,* 401 U. S. 527 (1971), held that the provisions of the McCarran Amendment, whereby "consent is . . . given to join the United States as a defendant in any suit (1) for the adjudication . . . or (2) for the administration of [water] rights, where it appears that the United States is the owner . . . by appropriation under state law, by purchase, by exchange, or otherwise . . . ," subject federal reserved rights to general adjudication in state proceedings for the determination of water rights. More specifically, the Court held that reserved rights were included in those rights where the United States was "otherwise" the owner. *United States* v. *District Court for Eagle County, supra,* at 524. Though *Eagle County* and *Water Div. 5* did not involve reserved rights on Indian reservations, viewing the Government's trusteeship of Indian rights as ownership, the logic of those cases clearly extends to such rights. Indeed, *Eagle County* spoke of non-Indian rights and Indian rights without any suggestion that there was a distinction between them for purposes of the Amendment. 401 U. S., at 523.

Not only the Amendment's language, but also its underlying policy, dictates a construction including Indian rights in its provisions. *Eagle County* rejected the conclusion that federal reserved rights in general were not reached by the Amendment for the reason that the Amendment "[deals] with an all-inclusive statute concerning 'the adjudication of rights to the use of water of a river system.'" *Id.,* at 524. This consideration applies as well to federal water rights reserved for Indian reservations. And cogently, the Senate report on the Amendment observed:

> "In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper

and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts." [16]

Thus, bearing in mind the ubiquitous nature of Indian water rights in the Southwest, it is clear that a construction of the Amendment excluding those rights from its coverage would enervate the Amendment's objective.[17]

Finally, legislative history demonstrates that the McCarran Amendment is to be construed as reaching federal water rights reserved on behalf of Indians. It was unmistakably the understanding of proponents and opponents of the legislation that it comprehended water rights reserved for Indians. In the Senate hearings on the Amendment, participants for the Department of Justice and the Department of the Interior made clear that the proposal would include water rights reserved on behalf of

---

[16] S. Rep. No. 755, *supra*, at 4–5.

[17] Indeed, if exclusion of Indian rights were the conclusion, conflicts between Indian and non-Indian rights, as well as practical matters of adjudication, might have the effect of requiring district-court adjudication of non-Indian along with Indian rights, thereby effectively vitiating our construction of the Amendment in *Eagle County* and *Water Div. 5*.

Indians.[18]   In addition, the Senate report on the Amendment took note of a recommendation in a Department of the Interior report that no consent to suit be given as to Indian rights and rejected the recommendation.[19]

The Government argues that because of its fiduciary responsibility to protect Indian rights, any state-court jurisdiction over Indian property should not be recognized unless expressly conferred by Congress.   It has been recognized, however, that an action for the destruction of personal property may be brought against an Indian tribe where "[a]uthority to sue . . . is implied." *Turner* v. *United States*, 248 U. S. 354, 358 (1919). Moreover, the Government's argument rests on the incorrect assumption that consent to state jurisdiction for the purpose of determining water rights imperils those rights or in some way breaches the special obligation of the Federal Government to protect Indians.   Mere subjection of Indian rights to legal challenge in state court, however, would no more imperil those rights than would a suit brought by the Government in district court for their declaration, a suit which, absent the consent of the Amendment, would eventually be necessitated to resolve conflicting claims to a scarce resource.   The Government has not abdicated any responsibility fully to defend Indian rights in state court, and Indian interests may be satisfactorily protected under regimes of state law. See 25 U. S. C. §§ 1321, 1322; 28 U. S. C. § 1360.[20]   Cf.

---

[18] See Hearings on S. 18 before the Subcommittee of the Senate Committee on the Judiciary, 82d Cong., 1st Sess., 6–7, 67–68 (1951).

[19] S. Rep. No. 755, *supra*, at 2, 7–8.

[20] To be sure, 25 U. S. C. § 1322 (b) and 28 U. S. C. § 1360 (b) provide that nothing in those sections "shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of [any real or personal property, including water rights, belonging to any Indian or any Indian tribe . . . that is held in trust by the United States]." This provision in

*California Oregon Power Co.* v. *Beaver Portland Cement Co.*, 295 U. S. 142, 164 n. 2 (1935). The Amendment in no way abridges any substantive claim on behalf of Indians under the doctrine of reserved rights. Moreover, as *Eagle County* said, "questions [arising from the collision of private rights and reserved rights of the United States], including the volume and scope of particular reserved rights, are federal questions which, if preserved, can be reviewed [by the Supreme Court] after final judgment by the Colorado court." 401 U. S., at 526.

## B

Next, we consider whether the District Court's dismissal was appropriate under the doctrine of abstention. We hold that the dismissal cannot be supported under that doctrine in any of its forms.

Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *County of Allegheny* v. *Frank Mashuda Co.*, 360 U. S. 185, 188–189 (1959). "[I]t was

---

both sections, however, only qualifies the import of the general consent to state jurisdiction given by those sections. It does not purport to limit the special consent to jurisdiction given by the McCarran Amendment. A contrary conclusion is foreclosed by the principle of construction that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton* v. *Mancari*, 417 U. S. 535, 550–551 (1974).

never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.,* 341 U. S. 341, 361 (1951) (Frankfurter, J., concurring in result). Our decisions have confined the circumstances appropriate for abstention to three general categories.

(a) Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny* v. *Frank Mashuda Co., supra,* at 189. See, *e. g., Lake Carriers Assn.* v. *MacMullan,* 406 U. S. 498 (1972); *United Gas Pipeline Co.* v. *Ideal Cement Co.,* 369 U. S. 134 (1962); *Railroad Comm'n of Texas* v. *Pullman Co.,* 312 U. S. 496 (1941). This case, however, presents no federal constitutional issue for decision.

(b) Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. *Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U. S. 25 (1959), for example, involved such a question. In particular, the concern there was with the scope of the eminent domain power of municipalities under state law. See also *Kaiser Steel Corp.* v. *W. S. Ranch Co.,* 391 U. S. 593 (1968); *Hawks* v. *Hamill,* 288 U. S. 52 (1933). In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In *Burford* v. *Sun Oil Co.,* 319 U. S. 315 (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil

wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields. See also *Alabama Pub. Serv. Comm'n* v. *Southern R. Co., supra.*[21]

The present case clearly does not fall within this second category of abstention. While state claims are involved in the case, the state law to be applied appears to be settled. No questions bearing on state policy are presented for decision. Nor will decision of the state claims impair efforts to implement state policy as in *Burford.* To be sure, the federal claims that are in-

---

[21] We note that *Burford* v. *Sun Oil Co.,* and *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.,* differ from *Louisiana Power & Light Co.* v. *City of Thibodaux,* and *County of Allegheny* v. *Frank Mashuda Co.,* in that the former two cases, unlike the latter two, raised colorable constitutional claims and were therefore brought under federal-question, as well as diversity, jurisdiction. While abstention in *Burford* and *Alabama Pub. Serv.* had the effect of avoiding a federal constitutional issue, the opinions indicate that this was not an additional ground for abstention in those cases. See *Alabama Pub. Serv. Comm'n* v. *Southern R. Co.,* 341 U. S., at 344; *Burford* v. *Sun Oil Co.,* 319 U. S., at 334; H. Hart & H. Wechsler, The Federal Courts and the Federal System 1005 (2d ed. 1973) ("The two groups of cases share at least one common characteristic: the Pullman purpose of avoiding the necessity for federal constitutional adjudication is not relevant"). We have held, of course, that the opportunity to avoid decision of a constitutional question does not alone justify abstention by a federal court. See *Harman* v. *Forssenius,* 380 U. S. 528 (1965); *Baggett* v. *Bullitt,* 377 U. S. 360 (1964). Indeed, the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention. See *Burford* v. *Sun Oil Co., supra,* at 318 n. 5; *Hawks* v. *Hamill,* 288 U. S., at 61.

volved in the case go to the establishment of water rights which may conflict with similar rights based on state law. But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction. See *Meredith* v. *Winter Haven,* 320 U. S. 228 (1943); *Kline* v. *Burke Constr. Co.,* 260 U. S. 226 (1922); *McClellan* v. *Carland,* 217 U. S. 268 (1910). The potential conflict here, involving state claims and federal claims, would not be such as to impair impermissibly the State's effort to effect its policy respecting the allocation of state waters. Nor would exercise of federal jurisdiction here interrupt any such efforts by restraining the exercise of authority vested in state officers. See *Pennsylvania* v. *Williams,* 294 U. S. 176 (1935); *Hawks* v. *Hamill, supra.*

(c) Finally, abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, *Younger* v. *Harris,* 401 U. S. 37 (1971); *Douglas* v. *City of Jeannette,* 319 U. S. 157 (1943);[22] state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, *Huffman* v. *Pursue, Ltd.,* 420 U. S. 592 (1975); or collection of state taxes, *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293 (1943). Like the previous two categories, this category also does not include this case. We deal here neither with a criminal proceeding, nor such a nuisance proceeding, nor a tax collection. We also do not deal with an attempt to restrain such actions[23] or to seek a

---

[22] Where a case is properly within this category of cases, there is no discretion to grant injunctive relief. See *Younger* v. *Harris.* But cf. *Samuels* v. *Mackell,* 401 U. S. 66, 73 (1971).

[23] Our reasons for finding abstention inappropriate in this case make it unnecessary to consider when, if at all, abstention would be appropriate where the Federal Government seeks to invoke federal

declaratory judgment as to the validity of a state criminal law under which criminal proceedings are pending in a state court.

## C

Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co.,* 342 U. S. 180, 183 (1952). See *Columbia Plaza Corp.* v. *Security National Bank,* 173 U. S. App. D. C. 403, 525 F. 2d 620 (1975). Generally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *McClellan* v. *Carland, supra,* at 282. See *Donovan* v. *City of Dallas,* 377 U. S. 408 (1964). As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. See *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co., supra; Steelman* v. *All Continent Corp.,* 301 U. S. 278 (1937); *Landis* v. *North American Co.,* 299 U. S. 248, 254 (1936). This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. *England* v. *Medical Examiners,* 375 U. S. 411,

---

jurisdiction. Cf. *Leiter Minerals, Inc.* v. *United States,* 352 U. S. 220 (1957).

415 (1964); *McClellan* v. *Carland, supra,* at 281; *Cohens* v. *Virginia,* 6 Wheat. 264, 404 (1821) (dictum). Given this obligation, and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist.

It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. *Donovan* v. *City of Dallas, supra,* at 412; *Princess Lida* v. *Thompson,* 305 U. S. 456, 466 (1939); *United States* v. *Bank of New York Co.,* 296 U. S. 463, 477 (1936). But cf. *Markham* v. *Allen,* 326 U. S. 490 (1946); *United States* v. *Klein,* 303 U. S. 276 (1938). This has been true even where the Government was a claimant in existing state proceedings and then sought to invoke district-court jurisdiction under the jurisdictional provision antecedent to 28 U. S. C. § 1345. *United States* v. *Bank of New York Co., supra,* at 479. But cf. *Leiter Minerals, Inc.* v. *United States,* 352 U. S. 220, 227–228 (1957). In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, cf. *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501 (1947); the desirability of avoiding piecemeal litigation, cf. *Brillhart* v. *Excess Ins. Co.,* 316 U. S. 491, 495 (1942); and the order in which jurisdiction was obtained by the concurrent forums, *Pacific Live Stock Co.* v. *Oregon Water Bd.,* 241 U. S. 440, 447 (1916). No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exer-

cise is required. See *Landis* v. *North American Co., supra,* at 254–255. Only the clearest of justifications will warrant dismissal.

Turning to the present case, a number of factors clearly counsel against concurrent federal proceedings. The most important of these is the McCarran Amendment itself. The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system. This policy is akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property. This concern is heightened with respect to water rights, the relationships among which are highly interdependent. Indeed, we have recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings. See *Pacific Live Stock Co.* v. *Oregon Water Bd., supra,* at 449. The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals.

As has already been observed, the Colorado Water Rights Determination and Administration Act established such a system for the adjudication and management of rights to the use of the State's waters. As the Government concedes [24] and as this Court recognized in *Eagle County* and *Water Div. 5,* the Act established a single continuous proceeding for water rights adjudication which antedated the suit in District Court. *United States* v. *District Court for Eagle County,* 401 U. S., at 525; *United States* v. *District Court for Water Div. 5,*

---

[24] See Brief for United States 46–49.

401 U. S., at 529. That proceeding "reaches all claims, perhaps month by month but inclusively in the totality." *Ibid.* Additionally, the responsibility of managing the State's waters, to the end that they be allocated in accordance with adjudicated water rights, is given to the State Engineer.

Beyond the congressional policy expressed by the McCarran Amendment and consistent with furtherance of that policy, we also find significant (a) the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss,[25] (b) the extensive involvement of state water rights occasioned by this suit naming 1,000 defendants, (c) the 300-mile distance between the District Court in Denver and the court in Division 7, and (d) the existing participation by the Government in Division 4, 5, and 6 proceedings. We emphasize, however, that we do not overlook the heavy obligation to exercise jurisdiction. We need not decide, for example, whether, despite the McCarran Amendment, dismissal would be warranted if more extensive proceedings had occurred in the District Court prior to dismissal, if the involvement of state water rights were less extensive than it is here, or if the state proceeding were in some respect inadequate to resolve the federal claims. But the opposing factors here, particularly the policy underlying the McCarran Amendment, justify the District Court's dismissal in this particular case.[26]

---

[25] As we have observed, the complaint was filed in District Court on November 14, 1972. The Federal Government was served in the state proceedings on January 3, 1973. Shortly thereafter, on February 13, 1973, a motion to dismiss was filed in District Court. Up to this point, it does not appear the District Court dealt in any other manner with the suit pending before it.

[26] Whether similar considerations would permit dismissal of a water suit brought by a private party in federal district court is a question we need not now decide.

The judgment of the Court of Appeals is reversed and the judgment of the District Court dismissing the complaint is affirmed for the reasons here stated.

*It is so ordered.*

MR. JUSTICE STEWART, with whom MR. JUSTICE BLACKMUN and MR. JUSTICE STEVENS concur, dissenting.

The Court says that the United States District Court for the District of Colorado clearly had jurisdiction over this lawsuit. I agree.[1] The Court further says that the McCarran Amendment "in no way diminished" the District Court's jurisdiction. I agree.[2] The Court also says that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." I agree.[3] And finally, the Court says that nothing in the abstention doctrine "in any of its forms" justified the District Court's dismissal of the Government's complaint. I agree.[4] These views would seem to lead ineluctably to the conclusion that the District Court was wrong in dismissing the complaint. Yet the Court holds that the order of dismissal was "appropriate." With that conclusion I must respectfully disagree.

---

[1] "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . . ." 28 U. S. C. § 1345.

[2] Nothing in the McCarran Amendment or in its legislative history can be read as limiting the jurisdiction of the federal courts. That law operates as no more than a *pro tanto* waiver of sovereign immunity. *United States* v. *District Court for Eagle County,* 401 U. S. 520; *United States* v. *District Court for Water Div. 5,* 401 U. S. 527.

[3] See *England* v. *Medical Examiners,* 375 U. S. 411, 415–416; *Meredith* v. *Winter Haven,* 320 U. S. 228.

[4] See *ante,* at 813–817.

In holding that the United States shall not be allowed to proceed with its lawsuit, the Court relies principally on cases reflecting the rule that where "control of the property which is the subject of the suit [is necessary] in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other." *Penn General Casualty Co.* v. *Pennsylvania ex rel. Schnader*, 294 U. S. 189, 195. See also *Donovan* v. *City of Dallas*, 377 U. S. 408; *Princess Lida* v. *Thompson*, 305 U. S. 456; *United States* v. *Bank of New York Co.*, 296 U. S. 463. But, as those cases make clear, this rule applies only when exclusive control over the subject matter is necessary to effectuate a court's judgment. 1A J. Moore, Federal Practice ¶ 0.214 (1974). Here the federal court did not need to obtain *in rem* or *quasi in rem* jurisdiction in order to decide the issues before it. The court was asked simply to determine as a matter of federal law whether federal reservations of water rights had occurred, and, if so, the date and scope of the reservations. The District Court could make such a determination without having control of the river.

The rule invoked by the Court thus does not support the conclusion that it reaches. In the *Princess Lida* case, for example, the reason for the surrender of federal jurisdiction over the administration of a trust was the fact that a state court had already assumed jurisdiction over the trust estate. But the Court in that case recognized that this rationale "ha[d] no application to a case in a federal court ... wherein the plaintiff seeks merely an adjudication of his right or his interest as a basis of a claim against a fund in the possession of a state court . . . ." 305 U. S., at 466. The Court stressed that "[n]o question is presented in the federal court as to the right of any person to participate in the res or as to the quantum of his interest in it." *Id.*, at 467. Similarly, in the

*Bank of New York* case, *supra,* the Court stressed that the "object of the suits is to take the property from the depositaries and from the control of the state court, and to vest the property in the United States . . . ." 296 U. S., at 478. "The suits are not merely to establish a debt or a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court." *Ibid.*[5] See also *Markham* v. *Allen,* 326 U. S. 490; *United States* v. *Klein,* 303 U. S. 276. See generally 1A J. Moore, Federal Practice ¶ 0.222 (1974); 14 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3631, pp. 19–22 (1976).

The precedents cited by the Court thus not only fail to support the Court's decision in this case, but expressly point in the opposite direction. The present suit, in short, is not analogous to the administration of a trust, but rather to a claim of a "right to participate," since the United States in this litigation does not ask the court to control the administration of the river, but only to determine its specific rights in the flow of water in the river. This is an almost exact analogue to a suit seeking a determination of rights in the flow of income from a trust.

The Court's principal reason for deciding to close the doors of the federal courthouse to the United States in this case seems to stem from the view that its decision will avoid piecemeal adjudication of water rights.[6] To

---

[5] *Donovan* v. *City of Dallas,* 377 U. S. 408, has relevance only insofar as the Court's opinion there contained a brief summary of the discussion in the *Princess Lida* case.

[6] The Court lists four other policy reasons for the "appropriateness" of the District Court's dismissal of this lawsuit. All of those reasons are insubstantial. First, the fact that no significant proceedings had yet taken place in the federal court at the time of the dismissal means no more than that the federal court was prompt in granting the defendants' motion to dismiss. At that time, of

the extent that this view is based on the special considerations governing *in rem* proceedings, it is without precedential basis, as the decisions discussed above demonstrate. To the extent that the Court's view is based on the realistic practicalities of this case, it is simply wrong, because the relegation of the Government to the state courts will not avoid piecemeal litigation.

The Colorado courts are currently engaged in two types of proceedings under the State's water-rights law. First, they are processing new claims to water based on recent appropriations. Second, they are integrating these new awards of water rights with all past decisions awarding such rights into one all-inclusive tabulation for each water source. The claims of the United States that are involved in this case have not been adjudicated in the past. Yet they do not involve recent appropriations of water. In fact, these claims are wholly dissimilar to normal state water claims, because they are not

course, no proceedings involving the Government's claims had taken place in the state court either. Second, the geographic distance of the federal court from the rivers in question is hardly a significant factor in this age of rapid and easy transportation. Since the basic issues here involve the determination of the amount of water the Government intended to reserve rather than the amount it actually appropriated on a given date, there is little likelihood that live testimony by water district residents would be necessary. In any event, the Federal District Court in Colorado is authorized to sit at Durango, the headquarters of Water Division 7. 28 U. S. C. § 85. Third, the Government's willingness to participate in some of the state proceedings certainly does not mean that it had no right to bring this action, unless the Court has today unearthed a new kind of waiver. Finally, the fact that there were many defendants in the federal suit is hardly relevant. It only indicates that the federal court had all the necessary parties before it in order to issue a decree finally settling the Government's claims. Indeed, the presence of all interested parties in the federal court made the lawsuit the kind of unified proceeding envisioned by *Pacific Live Stock Co.* v. *Oregon Water Bd.*, 241 U. S. 440, 447–449.

based on actual beneficial use of water but rather on an intention formed at the time the federal land use was established to reserve a certain amount of water to support the federal reservations. The state court will, therefore, have to conduct separate proceedings to determine these claims. And only after the state court adjudicates the claims will they be incorporated into the water source tabulations. If this suit were allowed to proceed in federal court the same procedures would be followed, and the federal court decree would be incorporated into the state tabulation, as other federal court decrees have been incorporated in the past. Thus, the same process will occur regardless of which forum considers these claims. Whether the virtually identical separate proceedings take place in a federal court or a state court, the adjudication of the claims will be neither more nor less "piecemeal." Essentially the same process will be followed in each instance.[7]

As the Court says, it is the virtual "unflagging obligation" of a federal court to exercise the jurisdiction that has been conferred upon it. Obedience to that obligation is particularly "appropriate" in this case, for at least two reasons.

First, the issues involved are issues of federal law. A federal court is more likely than a state court to be familiar with federal water law and to have had experience in interpreting the relevant federal statutes, regulations,

---

[7] It is true, as the Court notes, that the relationship among water rights is interdependent. When water levels in a river are low, junior appropriators may not be able to take any water from the river. The Court is mistaken, however, in suggesting that the determination of a priority is related to the determination of other priorities. When a priority is established, the holder's right to take a certain amount of water and the seniority (date) of his priority is established. That determination does not affect and is not affected by the establishment of other priorities.

and Indian treaties. Moreover, if tried in a federal court, these issues of federal law will be reviewable in a federal appellate court, whereas federal judicial review of the state courts' resolution of issues of federal law will be possible only on review by this Court in the exercise of its certiorari jurisdiction.

Second, some of the federal claims in this lawsuit relate to water reserved for Indian reservations. It is not necessary to determine that there is no state-court jurisdiction of these claims to support the proposition that a federal court is a more appropriate forum than a state court for determination of questions of life-and-death importance to Indians. This Court has long recognized that " '[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history.' " *McClanahan* v. *Arizona State Tax Comm'n*, 411 U. S. 164, 168, quoting *Rice* v. *Olson*, 324 U. S. 786, 789.

The Court says that "[o]nly the clearest of justifications will warrant dismissal" of a lawsuit within the jurisdiction of a federal court. In my opinion there was no justification at all for the District Court's order of dismissal in this case.

I would affirm the judgment of the Court of Appeals.

MR. JUSTICE STEVENS, dissenting.

While I join MR. JUSTICE STEWART's dissenting opinion, I add three brief comments:

First, I find the holding that the United States may not litigate a federal claim in a federal court having jurisdiction thereof particularly anomalous. I could not join such a disposition unless commanded to do so by an unambiguous statutory mandate or by some other clearly identifiable and applicable rule of law. The McCarran Amendment to the Department of Justice Appropriation

Act of 1953, 66 Stat. 560, 43 U. S. C. § 666, announces no such rule.

Second, the Federal Government surely has no lesser right of access to the federal forum than does a private litigant, such as an Indian asserting his own claim. If this be so, today's holding will necessarily restrict the access to federal court of private plaintiffs asserting water rights claims in Colorado. This is a rather surprising byproduct of the McCarran Amendment; for there is no basis for concluding that Congress intended that Amendment to impair the private citizen's right to assert a federal claim in a federal court.

Third, even on the Court's assumption that this case should be decided by balancing the factors weighing for and against the exercise of federal jurisdiction, I believe we should defer to the judgment of the Court of Appeals rather than evaluate those factors in the first instance ourselves. In this case the District Court erroneously dismissed the complaint on abstention grounds and the Court of Appeals found no reason why the litigation should not go forward in a federal court. Facts such as the number of parties, the distance between the courthouse and the water in dispute, and the character of the Colorado proceedings are matters which the Court of Appeals sitting in Denver is just as able to evaluate as are we.

Although I agree with Parts I, II, III–A, and III–B of the opinion of the Court, I respectfully dissent from the decision to reverse the judgment of the Court of Appeals for the Tenth Circuit.