The BLACKFEET INDIAN
NATION, Plaintiff,

v.

Donald P. HODEL, Richard Whitesell,
Judge W.W. Lessley, Judge Bernard
Thomas, Mike Greely, Leo Berry, Jo-
seph B. Marcotte, Gordon Aycock and
William French Smith, Defendants.

No. CV–83–151–GF.

United States District Court,
D. Montana,
Great Falls Division.

March 27, 1986.

William H. Veeder, Washington, D.C.,
Philip E. Roy, Browning, Mont., for plain-
tiff.

George F. Darragh, Jr., Asst. U.S. Atty.,
D. Montana, Great Falls, Mont., Mike Gree-
ly, Atty. Gen., State of Mont., Helena,
Mont., Deirdre Boggs, Koch, McKenna, Go-
heen & Boggs, Sp. Asst. Atty. Gen., Hamil-
ton, Mont., Helena S. Maclay, Sp. Asst.
Atty. Gen., Missoula, Mont., for defendants.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

This matter has been pending before the
court for a lengthy period of time. In light
of recent developments, specifically, deci-
sions by two different courts, it becomes
apparent that plaintiff's claims for relief
herein are foreclosed. Accordingly, the de-
fendants' motions for summary judgment
are GRANTED in full, and this matter is
DISMISSED.

This case is probably best character-
ized as a broad attack by the Blackfeet
Tribe upon the power of the state and
federal defendants to effectuate an adjudi-
cation of the Tribe's reserved water rights.
Plaintiff has persisted in its argument that
Montana courts have no jurisdiction to ad-
judicate Blackfeet Tribal water rights de-
spite the United States Supreme Court's
holding in *Arizona v. San Carlos Apache
Tribe*, 463 U.S. 545, 103 S.Ct. 3201, 77
L.Ed.2d 837 (1983). As the Ninth Circuit
just recently noted, that proposition has
been rejected on a number of fronts:

> As it has on numerous occasions in the
> past, the Tribe here again sought a rul-
> ing that Arizona courts had no jurisdic-
> tion to adjudicate the Tribe's water
> rights in W–1. The Tribe persists in
> misconstruing the McCarran Amendment
> and the decisions applying it. We find it
> difficult to respond to the Tribe's conten-
> tions at this late date other than to state
> flatly that the Tribe is wrong. The state
> court does have the authority to adjudi-
> cate tribal water rights in W–1. The

Congress has said so, *see* McCarran Amendment, 43 U.S.C. § 666; the United States Supreme Court has said so, *see Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983); *Colorado Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); the Arizona Supreme Court has said so, *see United States v. Superior Court in and for Maricopa County;* 144 Ariz. 265, 697 P.2d 658 (1985); and we have said so, *see Northern Cheyenne Tribe v. Adsit,* 721 F.2d 1187 (9th Cir.1983). It is time that the Tribe accept the proposition as true.

*White Mountain Apache Tribe v. Hodel, et al.,* 784 F.2d 921, 924 (9th Cir., 1986).

In *San Carlos,* the Supreme Court left open the question of whether 1) the state courts lacked jurisdiction under state law; and 2) the state procedures were adequate to adjudicate the tribes' water rights. In Arizona's *Maricopa County* case, cited above, the Arizona Supreme Court held that, as a matter of Arizona law, that state's constitutional disclaimer did not bar the state courts from adjudicating Indian or other federal reserved water rights. The Arizona court also found that that state's water adjudication procedures were not otherwise constitutionally infirm. At the time of the decision, the case was primarily important because the Arizona court chose to *decide* the issue of state court jurisdiction. Subsequently, however, the Montana Supreme Court rendered its opinion in *State of Montana v. Confed. Salish & Kootenai Tribes, et al.,* Mont. 712 P.2d 754, 42 St.Rptr. 1856 (1985). Under an opinion dated December 18, 1985, the Montana court held 1) that the Water Court of Montana was *not* prohibited, by Article I of the 1972 Montana Constitution, from exercising jurisdiction over Indian reserved water rights; 2) that the Montana Water Use Act, Title 85, Chap. 2, M.C.A. was, on its face, *adequate* to adjudicate Indian reserved water rights; and 3) that the Montana Act was, on its face, adequate to adjudicate federal reserved water rights.

■ After remand of *San Carlos,* the Ninth Circuit indicated that the question of jurisdiction under state law was "one to be definitively resolved by the state courts, as the Supreme Court has held." *No. Cheyenne Tribe v. Adsit,* 721 F.2d 1187, 1188 (9th Cir.1983), citing *San Carlos,* 463 U.S. at 561, 103 S.Ct. at 3210. That question has now been decided. The second matter, the adequacy of state procedures, has also been decided. After waiting, as *Adsit* directed, until the Montana court decided the adequacy issue, this court is left to consider the reasoning employed in the *State of Montana* decision. Belaboring the point would serve no useful purpose. This court has carefully considered the arguments presented in this litigation, and the lengthy opinion of the Montana Supreme Court. It is the judgment of this court that the procedures provided under Montana law are adequate, on their face, as a vehicle to adjudicate the rights at issue here. An *as applied* attack on those procedures, if presented to any extent, is obviously premature.

■ Plaintiff also alleges that the various federal defendants should be foreclosed from representing the Tribe in its water adjudication because of a conflict of interest. That conflict is said to emanate from the fact that the federal agencies also represent federal claims to water from the same sources. This issue has been raised and rejected, in the same context, at least twice.

In *Nevada v. United States,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), the Court wrote:

> ... [I]t may well appear that Congress was requiring the Secretary of the Interior to carry water on at least two shoulders when it delegated to him both the responsibility for the supervision of the Indian tribes and the commencement of reclamation projects in areas adjacent to reservation lands. But Congress chose to do this, and it is simply unrealistic to suggest that the Government may not perform its obligation to represent Indian tribes in litigation when Congress has obliged it to represent other interests as well. In this regard, the Government cannot follow the fastidious standards of a private fiduciary, who would breach his duties to his single beneficiary solely by

**648**

representing potentially conflicting interests without the beneficiary's consent. The Government does not "compromise its obligation to one interest that Congress obliges it to represent by the mere fact that it simultaneously performs another task for another interest that Congress has obligated it by statute to do. *Id.*, at 128, 103 S.Ct. at 2917. *See also, Arizona v. California,* 460 U.S. 605, 627–28, 103 S.Ct. 1382, 1395–96, 75 L.Ed.2d 318 (1983). As the Ninth Circuit noted, the Tribes can best protect their interests, and assure that zealous representation does not yield to conflicts of interest, by taking an active role in the state court proceedings instituted on their behalf. *White Mountain Apache Tribe, supra,* at 925.

For the reasons set forth above, IT IS HEREBY ORDERED AND ADJUDGED that the motion for summary judgment filed by the state defendants be, and the same hereby is, GRANTED. IT IS FURTHER ORDERED AND ADJUDGED that the federal defendants' motion to dismiss be, and the same hereby is, GRANTED, and this action is DISMISSED in its entirety.

LET JUDGMENT BE ENTERED ACCORDINGLY.