WILKINSON, Circuit Judge, concurring:
 

 I am pleased to concur in Judge Floyd's fine opinion. I write separately only to underscore both the folly and the hazard of Hamidullin's jurisdictional challenge. Hamidullin urges us to hold that a single Army regulation (AR 190-8) stripped the district court in this case of jurisdiction to conduct in the first instance his criminal trial. But an insurmountable series of obstacles stands in the way of any such ruling.
 
 See
 
 Maj. Op. at 17-20. A military regulation cannot overcome: an act of Congress granting the district courts jurisdiction over "all offenses against the laws of the United States,"
 
 18 U.S.C. § 3231
 
 ; the Commander-in-Chief's declaration that "Taliban detainees are unlawful combatants and, therefore, do not qualify as prisoners of war" under the Third Geneva Convention,
 
 see
 
 White House Memorandum, Humane Treatment of Taliban and al Qaeda Detainees 2 (Feb. 7, 2002); and the uniform legal framework applied by our allies-and heretofore, our own government-whereby Taliban fighters may be prosecuted as unlawful combatants in civilian courts.
 
 [1]
 

 Any conclusion to the contrary would defy logic. And it would turn on its head "the American constitutional tradition" of civilian control over the military.
 

 Greer v. Spock
 
 ,
 
 424 U.S. 828
 
 , 839,
 
 96 S.Ct. 1211
 
 ,
 
 47 L.Ed.2d 505
 
 (1976). The Supreme Court has emphasized that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction that Congress has given them.
 
 Colorado River Water Conservation Dist. v. United States
 
 ,
 
 424 U.S. 800
 
 , 817,
 
 96 S.Ct. 1236
 
 ,
 
 47 L.Ed.2d 483
 
 (1976). Allowing a military status determination under AR 190-8 to override the determination of the President and to both halt and overturn criminal prosecutions brought under duly enacted laws of Congress would fly in the face of our Constitution's guarantee that military judgments will be "subject
 
 always
 
 to civilian control of the Legislative and Executive Branches."
 
 Gilligan v. Morgan
 
 ,
 
 413 U.S. 1
 
 , 10,
 
 93 S.Ct. 2440
 
 ,
 
 37 L.Ed.2d 407
 
 (1973).
 

 Giving AR 190-8 precedence in such a way is not only incorrect as a matter of law; it would also have far-reaching consequences. The President's status declaration was a collective, not an individual, one. Empowering different panels of military officers to determine case by case whether Taliban fighters are entitled to POW status would throw the entire concept of a collective judgment overboard and would result in the disparate treatment of similarly situated detainees. And it would hamstring our country in its ability to approach armed conflicts in a unified fashion. It would also undermine the consistent practice of both the United States and its allies to uniformly treat Taliban fighters as insurgents who lack any claim to the Third Geneva Convention's combatant immunity defense. But perhaps most alarmingly, allowing status determinations under AR 190-8 to control here would threaten to elevate every band of terrorists around the world to near nation-state status and, in so doing, to extend the protections of the Third Geneva Convention to those who both regularly and flagrantly violate its dictates.
 

 For years, the aim of Taliban fighters was to get into the civilian courts. When those courts proved also capable of imposing just punishment, Taliban defendants sought to discredit them too. As Judge Floyd's cogent opinion demonstrates, this whole exercise is a shell game designed to play one part of American governance against another. An affirmance here respects the proper roles of our President, our Congress, our courts, our military, and the international alliance against the worldwide scourge of terrorism in which our nation plays such a crucial part.
 

 Among other procedural matters addressed in Army Regulation 190-8 are the following: listing the order in which the members of the tribunal and the recorder are sworn; requiring that a written record be made of the proceedings; mandating that the proceedings be open, save for deliberation, voting, or other matters that could compromise security; advising the captive person of his rights at the outset of the proceedings; providing the captive person with access to all open sessions of the proceedings and, if needed, an interpreter; allowing the captive person to call and question reasonably available witnesses, or to submit written statements to be considered as evidence; affording the captive person the right to testify or otherwise address the tribunal; protecting the captive person from being compelled to testify; requiring a written report of the tribunal decision; and identifying possible determinations, including that the captive person is a POW or an innocent civilian.
 
 See
 
 Reg. 190-8 at § 1-6(e)(1)-(8), (10).