UNITED STATES of America, Plaintiff,

v.

Henry R. ARMSTRONG,
M.D., Defendant.

No. CA 3–90–2649–G.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 23, 1991.

Marvin Laurence Collins, U.S. Atty. and Katherine Savers McGovern, U.S. Attorney's Office, Dept. of Justice, Dallas, Tex., for plaintiff.

Jasper C. Rowe, Chapman & Reese, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court are the motion for summary judgment of the plaintiff United States of America ("United States") and the motion for dismissal or stay of defen-

dant Henry R. Armstrong, M.D. ("Armstrong"). For the following reasons, the United States' motion for summary judgment is granted and Armstrong's motion for dismissal or stay is denied.

## UNDISPUTED FACTS

1. On approximately May 22, 1979, Armstrong applied for an award under the National Health Service Corps ("NHSC") Scholarship Program to finance his education at the University of Texas Southwestern Medical School. Armstrong sought to, and did, participate in the NHSC scholarship program funded by the United States to address the geographic maldistribution of health professionals whereby the United States would provide financial assistance to medical professionals upon a commitment by the participants to serve in the Public Health Service following graduation or to repay the scholarship grant pursuant to a set formula.

2. Prior to applying for the NHSC Scholarship Program, Armstrong was provided with an applicant information bulletin which fully described the program and stated that default on the service obligation would result in liability three times the amount of the NHSC Scholarship Program award, plus interest, with credit for partial service.

3. On September 28, 1979, Armstrong was awarded a scholarship for the period July 1, 1979—June 30, 1980. He requested, and received, additional funding for the 1980–1981, 1981–1982, 1982–1983 academic years. NHSC Scholarship funds thus paid for all four years of Armstrong's medical education. He received scholarship grants from NHSC totalling $29,417.

4. Following his graduation from the University of Texas Southwestern Medical School in June 1983, Armstrong requested and received a three year deferment of his service obligation to complete internal medicine training at the University of Texas Medical School in Houston, and at the University of Tennessee Health Sciences Center in Memphis. As a result of this deferment, Armstrong was due to begin his service obligation on July 1, 1986. On or about July 1, 1985, the NHSC mailed to Armstrong a packet of materials, including the Information Bulletin for the 1986 Placement Cycle.

5. On or about April, 1986, Armstrong, having accepted a position as an internist at the Texas Department of Corrections ("TDC") facility in Huntsville, Texas, submitted an application to serve at the TDC/Huntsville site under the Private Practice Option ("PPO"). Armstrong subsequently entered into a PPO agreement with a designee of the Secretary of Health and Human Services, whereby he agreed to serve at TDC/Huntsville from July 7, 1986 to July 7, 1990. Commencing July 7, 1986, Armstrong did serve one year of his four-year service commitment at TDC/Huntsville, Texas.

6. By letter dated June 18, 1987, Armstrong resigned from his position at TDC/Huntsville effective July 1, 1987, thereby breaching his NHSC Scholarship contract with the Public Health Service and abandoning his commitment to serve as a physician with the State of Texas Corrections System at Huntsville, Texas.

7. By letter dated November 9, 1987, the United States notified Armstrong that he had been placed in default and that, pursuant to Section 754(c) of the Public Health Services Act, 42 U.S.C. § 254o, his failure to complete his obligated service had resulted in a debt comprised of the actual amount borrowed enhanced by a penalty factor based upon a statutory formula, interest thereon, and administrative costs. The agency sent Armstrong several letters urging him to make arrangements for the payment of his debt and advising him of his appeal rights. Armstrong made no written response to these letters, nor is there any record in his scholarship file of a telephonic response from him.

8. By letter dated February 26, 1988, the United States notified Armstrong of his eligibility to fulfill his obligation through service rather than financial repayment under the Special Repayment Program, Section 204 of Pub.L. 100–177 (enacted December 1, 1987). Armstrong did not respond to this notification.

9. On June 4, 1990, demand was made on Armstrong—through a certificate of indebtedness signed by Jeanette Pang, chief of the Claims Collection Coordination Staff, Division of Fiscal Services, Office of the Administrator, Health Resources and Services Administration, U.S. Department of Health and Human Services—for payment of $166,744.07.

10. No voluntary payment has been made by Armstrong, although a small setoff was obtained as the result of a 1989 income tax refund. This amount, $96.25, has been applied to the accrued interest on his debt.

11. As of February 1, 1991, Armstrong's NHSC Scholarship debt, calculated in accordance with the statutory damages formula set forth at § 254o(b)(1) and Section C.3 of Armstrong's 1979–1980 Scholarship Contract, and fully crediting Armstrong's 359 days of service performed at TDC/Huntsville, is $175,358.56 (66,565.77 "Principal Due" and $108,792.79 "Interest Due"). Interest on the debt accrues at $31.66 per day.

12. The regulation implementing the NHSC Scholarship Program's statutory waiver protection (42 U.S.C. § 254o(d)(2)) provides that requests for waiver of the scholarship obligation must be submitted in writing, with supporting documentation, as codified at 42 C.F.R. § 62.12(b)(1). Before this litigation was commenced, the United States had not received a waiver request from Armstrong, and no waiver request was pending before the Secretary of the Department of Health and Human Services.

## ANALYSIS

The facts and law before this court are straightforward: Armstrong entered into a contract with the United States wherein he agreed, in exchange for almost $30,000 in scholarship grants to finance his medical education, to serve under the PPO as a physician in a designated Health Manpower Shortage Area ("HMSA") within the United States. He agreed to serve one year for each year that he received a NHSC scholarship award, thus obligating himself to serve four years for the four annual NHSC scholarships he received. Armstrong elected to discharge this obligation by serving under the PPO in a HMSA location in Huntsville, Texas. After approximately one year of service, Armstrong submitted his resignation effective July 1, 1987, and left the assigned location.[1] He is now practicing medicine in Dallas, Texas.

For more than three years, the United States, through its agency the Public Health Service, sought payment from Armstrong of his NHSC scholarship debt by sending letters to him that requested payment of the debt and informed him of the availability of payout programs and of his eligibility to extinguish the debt through the Special Repayment Program. Armstrong neither paid his debt nor took any other approved action to extinguish this debt.

▪ After this suit was filed, Armstrong submitted his first "waiver request" to the Secretary of the Department of Health and Human Services. The submission of such a waiver request does not demonstrate the existence of a material, disputed fact issue barring summary judgment. On the contrary, it is an admission by Armstrong that the existence of the contractual obligation and debt are not in dispute. A waiver request is only a petition which may or may not be granted.[2] Armstrong's argument that summary judgment should not be entered against him because the Secretary might grant his waiver request is only

---

**1.** Armstrong claims that his wife was unable to find employment in Huntsville because TDC breached its promise to assist her in obtaining a job. The record reflects no evidence of such a promise. Armstrong also contends that his wife was forced to move to Dallas to be near her terminally ill father in Tyler. Her father died on August 10, 1987. Armstrong made a request, by telephone only, to Doug Mahay of the Public Health Service for a transfer to Dallas. Mahay did not approve a transfer.

**2.** By statute, 42 U.S.C. § 254o, and regulation, 42 C.F.R. § 62.12(b)(1), the decision whether an obligation should be waived in whole or in part is solely that of the Secretary of the Department of Health and Human Services, or his designee. 42 U.S.C. § 254o(c)(3), (d)(2).

speculation, not a dispute over a material fact. His waiver request was not even complete enough for the Department of Health and Human Services to make a decision.[3] Thus, Armstrong has not shown any basis for denying the United States' motion for summary judgment. There are no material facts which dispute: (1) Armstrong's contractual obligation under the NHSC Scholarship Program to either serve four years or to pay the statutory damages; (2) Armstrong's default on his contractual obligation; (3) the amount of the statutory damages; (4) the United States' statutory right to bring suit to collect these damages.

### Summary Judgment is Appropriate

The standard for granting summary judgment is set forth in *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986):

> under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

The party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* 477 U.S. at 323, 106 S.Ct. at

2552; Rule 56(c), Federal Rules of Civil Procedure.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), held that the standard for granting summary judgment under Rule 56 is the same as that for granting a directed verdict under Rule 50 of the Federal Rules of Civil Procedure. The court there stated:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [opponent of the motion] on the evidence presented. The mere existence of a scintilla of evidence in support of the [opponent's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opponent].

477 U.S. at 252, 106 S.Ct. at 2512.

■ On the evidence submitted with the memorandum in support of the motion for summary judgment, it is unmistakable that Armstrong breached his contract with the United States under the NHSC Scholarship Program and that the statutory damages computed by means of the NHSC statutory formula should be awarded to the United States.[4]

■ Nor does Armstrong's pending waiver request create an issue of material fact precluding summary judgment. 42 U.S.C. § 254*o*(c)(3), (d)(2) places all of the authority to waive or suspend an obligation arising under the NHSC Scholarship Program with the Secretary of Department of Health and Human Services. Any review of the Secretary's decision would be under the "abuse of discretion" standard of the Administrative Procedure Act. *See U.S. v. Roper*, 681 F.Supp. 77, 86 (D.Me.1988), *vacated and remanded*, 873 F.2d 1432 (1st

---

3. On January 22, 1991, the Scholarship Program received a letter dated January 17, 1991 containing the first waiver request ever made by Armstrong. The letter lacks supporting documentation. *See* 42 C.F.R. § 62.12(d). *Cf. United States v. Melendez*, 944 F.2d 216 (5th Cir.1991) slip op. at 187–88 (because Melendez presented no evidence on hardship factors as required by 42 C.F.R. § 62.12(d), no reasonable juror could find that hardship waiver was warranted).

4. Armstrong's motion includes an argument— not supported by any affidavit or other facts— that the numerical computations are incorrect. Because Rule 56(e) does not recognize argument as a basis for establishing a material fact in dispute, this contention must be disregarded for summary judgment purposes. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (opponent cannot rely on pleadings to avoid summary judgment but must make showing on the basis of evidentiary materials specified in Rule 56(c)).

Cir.1989) (table). Both parties agree that any decision the Secretary may make regarding Armstrong's waiver request submitted on January 22, 1991 is not ripe for review by this court. The instant suit is based solely upon Armstrong's breach of his contractual obligation, which is undisputed, and upon the United States' statutory right to recover damages resulting from said breach.

### Stay or Dismissal Would Not be Appropriate

■■■ The essence of Armstrong's arguments in support of stay or dismissal rest upon either speculative premises or unripe contentions. His motion is based on a request to the Secretary of the Department of Health and Human Services for a waiver of his financial obligation based upon hardship. The issue of Armstrong's waiver request is not before this court, and no action taken by the United States adverse to Armstrong, within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702, would bring it before this court. There is thus no factual basis for Armstrong's motion and no agency decision to be reviewed because no agency decision relating to the waiver request has been made. The mere submission of a waiver request [5] is not a defense to the entry of judgment.

The only case cited by Armstrong, *United States v. Roper*, above, provides no support for his contention that this collection case should be stayed for consolidation with any action he might later bring if his waiver request were denied. In that case, Dr. Roper raised the defense that the agency's past denial of her request for a waiver was an adverse action within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, and was erroneous within the standards established for judicial review by the Administrative Procedure Act, 5 U.S.C. § 705. With the appar-

ent agreement of the parties, a stay was entered by the court so that the agency could review the denial of waiver based on new information submitted by Dr. Roper. 681 F.Supp. at 81, 87 n. 8. *Roper* is distinguishable because the United States does not consent to a stay in this case, and there is no adverse agency action against Armstrong which represents an exhaustion of administrative remedies reviewable under the Administrative Procedure Act, 5 U.S.C. § 702.

### Judicial Economy and Fairness Require that Judgment be Entered Against Armstrong

The circumstances here do not support Armstrong's request for a stay on grounds of judicial economy and fairness. The cases cited by him are easily distinguished. For example, *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), concerned the question whether, in situations involving the contemporaneous exercise of concurrent jurisdiction between state and federal courts, or between federal courts, considerations of conservation of judicial resources and comprehensive disposition of litigation support the imposition of a stay by federal courts. *Id.* at 817, 96 S.Ct. at 1246. The case before this court involves no contemporaneous exercise of concurrent jurisdiction between either state or federal courts. Similarly, *United States v. Cargill, Inc.*, 508 F.Supp. 734 (D.Del. 1981), is unlike this case because it involved parallel cases filed in state and federal court. The court stated:

> The burden is upon the party seeking a discretionary stay or dismissal to prove that an adequate justification exists for such action. *Landis v. North American Co.*, *supra*, 299 U.S. [248] at 255, 57 S.Ct. [163] at 166 [81 L.Ed. 153 (1936) ].... In this regard, the suppliant must demonstrate the existence of "exceptional cir-

5. As a separate argument in support of stay or dismissal, Armstrong suggests that he will perform a service option. Not only does he provide no specific information as to a proposed location, he provides no documentation, e.g., lease or loan commitment. Similarly, he does not provide a copy of any application or propos-

al which he has in fact submitted to the Department of Health and Human Services to have such space so designated. Armstrong cannot force the Public Health Service to ignore the health shortage areas and priorities which it has already identified in order to accommodate his own personal desires or needs.

cumstances" or "a clear case of hardship or inequity in being required to go forward" before a district court may stay its hand. *Colorado River Water Conservation Dist. v. United States, supra,* 424 U.S. [800] at 817–19, 96 S.Ct. [1236] 1246–47 [47 L.Ed.2d 483 (1976) ].... Although at a minimum there must be parallel proceedings, this alone is insufficient to warrant the grant of a stay or dismissal.

*Id.* at 748–749.

Here, there are no parallel judicial proceedings involving Armstrong or the United States. Thus, neither *Colorado River* nor *Cargill* provide any support for the relief he seeks. Since Armstrong has shown no circumstances which would justify the imposition of a stay and since he has shown no legally cognizable prejudice from the denial of a stay and the granting of judgment in favor of the United States, there is no equitable basis for granting a stay or dismissal of this action.

## CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment is GRANTED and Armstrong's motion for dismissal or a stay is DENIED.

SO ORDERED.