959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff,
v.
GILA VALLEY IRRIGATION DISTRICT, et al.; State of Arizona,
Defendants-Appellees,
v.
San Carlos Apache Tribe, Plaintiff-intervenor-Appellant.
 Nos. 90-16720, 90-16721.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1992.
Decided April 3, 1992.
As Amended on Denial of Rehearing and
Rehearing En Banc June 5, 1992.
 
 Before NOONAN, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States, the Gila River Indian Community, and the San Carlos Apache Tribe brought suit against the Gila Valley Irrigation District and other upper valley defendants, alleging violations of the 1935 Consent Decree, which established rights to the waters of the Gila River. Count six of the Apaches' complaint and count eight of the Gila River Indian Community's complaint allege that various upper valley defendants are pumping Gila River water out of wells in violation of the Decree. The district court stayed these counts pending a comprehensive general stream adjudication that was, and is, currently pending in the Arizona Superior Court. The Apaches now appeal the stay order. We assume without deciding that we have jurisdiction over this appeal on the ground that the stay order is a final appealable order, see, e.g., Nakash v. Marciano, 882 F.2d 1411, 1413 (9th Cir.1989), and we now affirm.
 
 
 3
 * The district court stayed the federal proceeding under the abstention doctrine enunciated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). We review a district court's Colorado River stay order for abuse of discretion. See, e.g., Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367 (9th Cir.1990); Nakash, 882 F.2d at 1413. However, "[i]n abstention cases, 'discretion must be exercised within the narrow and specific limits prescribed....' Thus the district court judge ... must have exercised discretion within the 'exceptional circumstances' limits of the Colorado River abstention doctrine." Nakash, 882 F.2d at 1413 (quoting American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1256 (9th Cir.1988)).
 
 II
 
 4
 In determining whether a stay is appropriate under the Colorado River doctrine, the Supreme Court in Colorado River, 424 U.S. at 818, and Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 25-26 (1983), enumerated six relevant factors. We have summarized these factors as follows:
 
 
 5
 In Colorado River the Court examined four factors to determine whether staying proceedings was appropriate: (1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. In Moses Cone, the Court articulated two more considerations: (5) whether state or federal law controls and (6) whether the state proceeding is adequate to protect the parties' rights. "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.' "
 
 
 6
 Nakash, 882 F.2d at 1415. (citations omitted) (quoting American Int'l Underwriters, 843 F.2d at 1257). Additionally, in Nakash we articulated two additional factors to consider when evaluating the propriety of a stay: (7) whether the proceedings are substantially similar, and (8) whether the second suit is an attempt to forum shop or avoid adverse rulings by the state court. Id. at 1416-17. An application of these factors to this case demonstrates that the district court did not abuse its discretion in granting the stay.[1]
 
 
 7
 The avoidance of piecemeal litigation is the single most important factor to be considered. See Colorado River, 424 U.S. at 819. The district court's determination that a stay order would help avoid piecemeal litigation was not an abuse of discretion.
 
 
 8
 Prior to deciding whether pumping from wells is violating the Decree, extensive factual adjudication must be undertaken to determine whether the wells actually are pumping water out of the Gila River. The Arizona comprehensive water rights adjudication will do this. Also, as the district court found, the state court adjudication will be relatively efficient because the Arizona Department of Water Resources (DWR) is available to make hydrologic determinations. Permitting the state court to engage in preliminary fact-finding thus allows the district court to avoid duplicative and piecemeal litigation.[2]
 
 
 9
 The Apaches argue that piecemeal litigation will not be avoided because the state proceeding will adjudicate rights under state law, whereas the federal suit is governed by the terms of the Decree. This argument lacks merit. The parties do not dispute that, in both the federal and the state proceedings, the courts must make the hydrologic determination as to whether a well is pumping groundwater or Gila River water. Allowing the DWR to perform the initial hydrologic evaluations actually will decrease duplicative or piecemeal litigation because those factual findings can be applied by the district court when it enforces the Decree.[3]
 
 
 10
 United States v. Adair, 723 F.2d 1394 (9th Cir.1983), cert. denied, 467 U.S. 1252 (1984), upon which the Apaches rely, does not dictate a different result. In Adair, the district court declined to dismiss or stay a suit in deference to a "nascent" state court proceeding. See id. at 1400-07. We affirmed the district court's decision because, in contrast to the nascent state adjudication, the district court already had "taken evidence, heard extensive argument from all of the parties, and developed a multi-volumed record on which to base its decision of the water rights questions presented by this case." Id. at 1405. Adair, therefore, represents the converse of the case at bar. In Adair, a stay would have resulted in piecemeal and duplicative litigation because the federal court proceeding was significantly more advanced than the state court proceeding. In this case, granting the stay avoids piecemeal and duplicative litigation because the Arizona proceedings are more advanced.
 
 
 11
 The order in which the forums obtained jurisdiction is another factor which supports the district court's order. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. The state comprehensive water rights adjudication was initiated in the mid-1970s. Although the parties dispute the date by which the state court adjudication will be completed, the DWR has already begun its investigation of the Gila River, and it expects to publish its Hydrographic Survey Report in the next few years. In contrast, the district court's stay order was issued in 1990, and neither before nor since that time has any federal adjudication of the groundwater pumping controversy taken place.
 
 
 12
 The question of whether state or federal law controls also does not militate against the granting of the stay. The district court acknowledged that the Decree could be inconsistent with state-established water rights standards. However, as discussed supra, preliminary adjudications in the federal suit to determine if wells are pumping groundwater or river water are governed by state law standards. Thus, issuing a stay and permitting the DWR to perform the hydrologic examinations of the wells will not create any inconsistency at this stage of the litigation.
 
 
 13
 The next factor is whether the Arizona state court proceeding will adequately protect the rights of the parties to the federal suit. Although the state court may adopt standards that are inconsistent with the Decree, the district court specifically stated that it will intervene in order to resolve any inconsistencies that may develop. Thus, the district court's order alleviates any concern that the Arizona proceeding will inadequately protect the rights of the lower valley water users.
 
 
 14
 The final factor is whether the two suits are substantially similar. The Apaches argue that, because the two suits are neither "identical" nor completely parallel, the stay order was improper. We addressed this argument in Nakash, 882 F.2d at 1416-17, and held that "exact parallelism" is not required. Rather, "[i]t is enough if the two proceedings are 'substantially similar.' " Id. at 1416. The federal suit and the Arizona suit can fairly be deemed "substantially similar" because both involve, at least in their preliminary stages, a determination of the effect of pumping from wells near the Gila River. These similarities are sufficient to support the district court's stay.[4]
 
 
 15
 The Apaches' reliance on Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist., 763 F.2d 1032 (9th Cir.), cert. denied, 474 U.S. 1032 (1985), is misplaced. In Kittitas, we affirmed the district court's decision not to dismiss a federal suit involving a water rights consent decree in favor of a state court general stream adjudication. Id. at 1034. We determined that Colorado River abstention was not required because the factors enumerated in Colorado River were not present. Id. at 1035. The fact that a stay was not appropriate in Kittitas, however, does not mean that the granting of a stay in this case was an abuse of discretion. Because the Colorado River and Moses H. Cone factors militate in favor of a stay under the specific facts of this case, we are not bound by Kittitas to find that the district court erred in granting the stay.[5]
 
 
 16
 The Apaches' reliance on Travelers Indemnity, 914 F.2d 1364, also is unavailing. In Travelers Indemnity, we examined all the Colorado River/Moses H. Cone factors, applied the appropriate balancing test, and concluded that the district court abused its discretion in refusing to exercise jurisdiction. 914 F.2d at 1367-72. Travelers Indemnity, however, is distinguishable in that "at the time of the district court's stay order the state court had made no rulings whatsoever in regard to this dispute, [so] there is no certainty that duplicative effort would result." 914 F.2d at 1369. In this case, by contrast, the state court already has invested significant resources on the water rights determinations, and is making steady, if slow, progress towards a final adjudication. Also, the district court, as it has indicated, is always available to a motion by the Apaches to dissolve the stay because the state proceeding has bogged down.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Factors one, two, and eight are not relevant to this case
 
 
 [2]
 We understand that some 60,000 claims are involved in the Arizona litigation. The interests of judicial efficiency in this case, therefore, will be best served if the state court's hydrologic examination of the upper valley wells involved in the federal litigation is commenced at an early date. We encourage the court to do so
 
 
 [3]
 The Apaches also argue that because the federal court need only determine the cumulative impact of pumping, there is no reason to wait for the more detailed individual well adjudications which will be done in the state court proceeding. The Apaches' argument is flawed because it fails to acknowledge that a certain amount of factual adjudication is a prerequisite to deciding this case, and the state court already has begun to undertake that adjudication
 
 
 [4]
 The Apaches rely on American Mfrs. Mut. Ins. Co. v. Edward D. Stone Jr. & Assoc., 743 F.2d 1519 (11th Cir.1984), to argue that a stay is appropriate only if the state and federal actions are "truly parallel." Reliance on American Manufacturers is misplaced because we have specifically held that "exact parallelism" is not required; substantial similarity is sufficient. See Nakash, 882 F.2d at 1416-17
 
 
 [5]
 In Kittitas we noted that the district court had been presented with an emergency situation, and the existence of an emergency bolstered the district court's decision to exercise jurisdiction. The Apaches acknowledged in oral argument that no emergency situation exists in this case, and thus this factor does not indicate that the district court abused its discretion
 The Apaches also rely on Joint Bd. of Control of Flathead, et. al. Irrigation Dists. v. United States, 832 F.2d 1127 (9th Cir.1987), cert. denied, 486 U.S. 1007 (1988). That case is similar to Kittitas, and to the extent that Flathead is based on the "emergency" doctrine, it too is inapplicable to this case.