22 F.3d 1106
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 PROFILE MANUFACTURING, INC., John F. Gall, James R. Gall and
Donald G. Blondeau, Plaintiffs-Appellants,
v.
Ronald D. KRESS, Defendant-Appellee.
 No. 93-1569.
 United States Court of Appeals, Federal Circuit.
 March 30, 1994.
 
 Before ARCHER, Chief Judge,* SMITH, Senior Circuit Judge, and MICHEL, Circuit Judge.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Profile Manufacturing, Inc., et al. (Profile) appeal from the July 28, 1993 order of the United States District Court for the Eastern District of Michigan, Case No. 93-71042, granting Ronald D. Kress' (Kress') motion to stay the district court case pending the outcome of a related Michigan state court action. Because the district court did not abuse its discretion in ordering the stay, we affirm.
 
 DISCUSSION
 
 2
 Profile and Kress have been involved in a series of litigations concerning alleged licensing and ownership rights under United States Patent No. 5,134,829 (the '829 patent), issued to Kress, directed to a method and apparatus for mounting molding on vehicles. On February 17, 1993, Kress filed a first Michigan state court action including, inter alia, a Count V requesting declaratory judgment that Kress was the sole inventor and owner of the '829 patent and that a non-exclusive royalty-free license granted to Profile had expired when Kress involuntarily left Profile's employ. Kress also sought an order permanently enjoining Profile from using the patented process. The action was removed to the district court and subsequently it was voluntarily dismissed, by request of Kress, pursuant to Rule 41(a)(1), Fed.R.Civ.P.
 
 
 3
 Kress filed a second Michigan state court action on March 9, 1993, containing a Count V identical to that of the first suit except for the omission of a request for injunctive relief. One day later, on March 10, 1993, Profile filed the district court action in issue here.
 
 
 4
 In its action, Profile sought declaratory judgment of: (1) ownership of the '829 patent by Profile and thereby no infringement; (2) correction of inventorship of the '829 patent to include James Gall, Profile's current President, as a joint inventor resulting in ownership by Profile; and (3) unenforceability of the '829 patent. Kress filed a motion to dismiss or, in the alternative, to stay the district court action pending resolution of his second state court action.
 
 
 5
 The district court granted Kress' motion to stay pending the outcome of the state court action. The court found that Profile's district court action was filed "in direct response" to Kress' second state court action. Profile Mfg., Inc. v. Kress, No. 93-71042, slip op. at 2 (E.D.Mich. July 28, 1993). The court further found that the action involved issues "concerning employment contracts and licenses that must be addressed by the court first taking jurisdiction," in this case the state court. Id. (citing United States v. Mierzanka, 89 F.Supp. 573, 574 (W.D.Mich.1949) ("[W]here a State court and a court of the United States may each take jurisdiction, the court which first takes jurisdiction holds it to the exclusion of the other court ... [and] its authority continues ... until the matter is finally and completely disposed of.")), aff'd, 181 F.2d 93 (6th Cir.1950).
 
 
 6
 The district court subsequently denied Profile's motion for reconsideration of the stay order. Profile appealed here.
 
 1. Jurisdiction:
 
 7
 Before addressing the merits of Profile's appeal, we must first determine whether we have jurisdiction. Kress argues that this court does not have jurisdiction because the district court's order to stay is not final under 28 U.S.C. Sec. 1295 (1988).
 
 
 8
 Under normal circumstances, a stay is not considered a final order. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n. 11 (1983). However, this court has previously held that where a litigation has been stayed for a prolonged or uncertain period of time so as to deprive the claims of practical remedy, a stay can be an appealable final order in certain circumstances. Kahn v. General Motors Corp., 889 F.2d 1078, 1080, 12 USPQ2d 1997, 1998-99 (Fed.Cir.1989). Moreover, in Moses H. Cone, the Supreme Court held that a district court's stay order, pending resolution of a party's state court action presenting the same issue, was final for purposes of appellate jurisdiction because the party was "effectively out of court." 460 U.S. at 10-11. The Court noted that an order does not become final "merely because it may have the practical effect of allowing a state court to be the first to rule on a common issue." Id. at 11 n. 11. Rather, the Court stated: "We hold only that a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court." Id.
 
 
 9
 This case presents a close question of our jurisdiction. Unlike the situation in Moses H. Cone, the stay here does not have the effect of completely surrendering the entire federal suit to the state court. However, the stay is for a prolonged and uncertain period of time, like the situation in Kahn. Profile argues that the district court's stay effectively puts it "out of court" at least on the issue of inventorship, thereby precluding it from having a timely resolution of that claim. Profile further argues that the indefinite delay leaves its right to practice the invention of the '829 patent in a state of uncertainty, during which it runs the risk of accruing damages. We are thus persuaded that in this case the stay is an appealable final order for jurisdictional purposes.
 
 2. The Merits:
 
 10
 A decision to stay federal proceedings pending a state court determination is within the discretion of the district court and subject to an abuse of discretion standard on review. Moses H. Cone, 460 U.S. at 19.
 
 
 11
 The trial court's decision whether to stay must be made within the guidelines set out by recent controlling Supreme Court precedent. In Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), the Court stated that "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,' " noting the existence of a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). In Moses H. Cone, the Court noted that in "exceptional" circumstances, a federal suit may be dismissed or stayed pending a state court action upon the "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." 460 U.S. at 16. These factors include which court first assumed jurisdiction, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, whether state or federal law provides the rule of decision on the merits, the adequacy of the state court to protect the parties' rights, and whether one of the actions has a vexatious or reactive nature. Id. at 15-16, 18 n. 20; Colorado River, 424 U.S. at 818. The Court noted that the list was not exhaustive, and that "[t]he weight to be given to any one factor may vary greatly from case to case." Moses H. Cone, 460 U.S. at 16.
 
 
 12
 Profile argues on appeal that the district court abused its discretion in granting the stay because it not only failed to properly apply the balancing test set out in Colorado River and Moses H. Cone, but neglected even to cite these controlling precedents. Despite the shortcomings of the district court's written order, we conclude that the court actually made the necessary findings on the relevant factors, either explicitly or implicitly.
 
 
 13
 The court expressly found that the state court took jurisdiction prior to the federal court, and that the district court action, filed one day after the filing date of the second state court action, was obviously reactionary. Slip op. at 2. The court also noted that the central issues of the case, the contract and licensing claims relating to the ownership dispute, were governed by state law. Id. Therefore, the district court explicitly made findings on three of the six factors enumerated by the Supreme Court in Moses H. Cone and Colorado River. On two remaining factors, avoiding piecemeal litigation and adequacy of the state forum, the court made implicit findings. The court suggested that piecemeal litigation would be minimized by allowing the contract and ownership issues to be decided first by the state court. Id. at 2-3. Additionally, the court noted that the contract and licensing issues central to the dispute could properly be decided by the state court. Id. The only enumerated factor not addressed by the district court was the inconvenience of the federal forum. Because both actions are located in the State of Michigan, this is clearly not a significant factor in this case.
 
 
 14
 Profile contests the court's finding that state law provides the rule of decision on the merits, characterizing the district court dispute as turning on issues of infringement and inventorship, both of which are governed exclusively by federal law. Profile further argues that the state court provides an inadequate forum to protect its rights, relying on the following passage from Moses H. Cone:
 
 
 15
 When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.
 
 
 16
 460 U.S. at 28 (emphasis added). According to Profile, the state court lacks jurisdiction to resolve the inventorship, infringement and unenforceability issues, therefore Profile argues that it does not provide an adequate forum for complete and prompt resolution of the issues between the parties. Consequently, Profile asserts that the district court abused its discretion.
 
 
 17
 The law is clear that a state court has jurisdiction to resolve a defense to an action arising under state contract laws raising federal patent issues. Lear v. Adkins, 395 U.S. 653, 676 (1968); In re Oximetrix, Inc., 748 F.2d 637, 641-42, 223 USPQ 1068, 1072 (Fed.Cir.1984). Moreover, these patent issues are not the central issues of the dispute between the parties. Ownership of the patent is. Although Profile requests a correction of inventorship, the context of the pleadings makes clear that this is done for the purpose of securing joint ownership of the patent to defeat any claims that Kress may have under the alleged license agreement. Furthermore, infringement was neither pleaded in the state court complaint nor raised as a compulsory counterclaim in the district court case. Therefore, Profile has not established a current threat of infringement litigation requiring immediate decision of its federal declaratory judgment action. Under these circumstances, the state forum is adequate.
 
 
 18
 Finally, we disagree with Profile that the stay will necessarily increase piecemeal litigation. Allowing the state court to first decide the contract and ownership issues could resolve the entire dispute between the parties, making the district court action unnecessary. If, on the other hand, the state court action does not resolve all of the disputes between the parties, resolution of the remaining issues may still be made by the district court.
 
 3. Conclusion:
 
 19
 The district court made explicit and implicit findings on substantially all of the factors set out by the Supreme Court that are relevant here. Based on those findings, we conclude that the district court performed an adequate balancing of the relevant factors in determining that this was an exceptional case warranting issuance of a stay. Even though we may have decided the issue differently, on this record, we cannot say that there was an abuse of discretion.
 
 
 
 *
 Chief Judge Archer assumed the position of Chief Judge on March 18, 1994