**In re Petition of Malcolm L. BUTTER-FIELD and Michael W. Morrison as the Joint Provisional Liquidators of First Virginia Reinsurance, Ltd., Debtor in a Foreign Proceeding.**

No. 03–40202–DOT.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Jan. 20, 2004.

Dion W. Hayes, Esq., Joseph S. Sheerin, Esq., McGuire Woods LLP, Richmond, VA, for debtor.

Douglas W. Davis, Esq., Peter S. Partee, Esq., Douglas M. Garrou, Esq., Hunton & Williams, Richmond, VA, for General Reinsurance Corporation.

Robert A. Dybing, Esq., Thompson & McMullan, P.C., Richmond, VA, for Alfred W. Gross.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Bankruptcy Judge.

This case ancillary to a foreign proceeding was commenced by the filing of a petition under § 304 of the Bankruptcy Code. On December 12, 2003, hearing was held on the motions to dismiss or abstain filed by Alfred W. Gross, Commissioner of Insurance, Virginia State Corporation Commission, Bureau of Insurance, as Deputy Receiver of Reciprocal of America and The Reciprocal Group, and by the Special Deputy Receivers of Doctors Insurance Reciprocal, American National Lawyers Insurance Reciprocal and the Reciprocal Alliance. Also before the court was the motion of General Reinsurance Corporation to stay the § 304 proceeding pending a decision by the Judicial Panel on Multidistrict Litigation or in the alternative to transfer or abstain. The court ruled from the bench that the dismissal and mandatory abstention portions of the motions would be denied. The court also ruled from the bench that the transfer and stay portions of the General Reinsurance motion would be denied and took the issue of discretionary abstention under advisement.

For reasons stated below, the court will not abstain, and all three motions must therefore be denied.

The court makes and enters the following Order and Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52.

### Procedural History

On October 28, 2003, Malcolm L. Butterfield and Michael W. Morrison (petitioners), as the Joint Provisional Liquidators in the Bermuda Supreme Court for First Virginia Reinsurance, Ltd. (FVR), filed in this court their verified petition pursuant to § 304 of the United States Bankruptcy Code, 11 U.S.C. § 304 (2000), to commence a case ancillary to a foreign proceeding. In their petition, petitioners sought essentially two forms of relief: (a) an injunction under § 304(b)(1) of the Bankruptcy Code against, among other things, the commencement or continuation of any action in the United States against FVR or FVR's property; and (b) turnover of property of FVR's estate under § 304(b)(2) of the Bankruptcy Code. Specifically with respect to turnover, petitioners sought to require Alfred W. Gross, as deputy receiver of Reciprocal of America and The Reciprocal Group in receivership for liquidation (the Virginia receiver), to turn over to petitioners funds in the possession of the Virginia

receiver. Petitioners contend those funds are property of FVR's estate.

On October 30, 2003, the court entered an order to show cause why a preliminary injunction pursuant to § 304 should not be issued and also entered a temporary restraining order (the TRO). In the TRO, the court temporarily enjoined actions against FVR or its property until the resolution of the petition.

The Virginia receiver is the only party that has filed an answer to the petition. The Virginia receiver has also filed a Motion to Dismiss or in the Alternative to Abstain, seeking the dismissal of the case under Fed. R. Bankr.P. 7012 and Fed. R.Civ.P. 12 or in the alternative abstention under 28 U.S.C. § 1334(c) (Supp.2003). The Virginia receiver seeks dismissal on the basis that under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015 (2000), Virginia insurance law reverse-preempts the provision of the Bankruptcy Code that would provide the relief requested by petitioners. The Virginia receiver also requests that the court abstain from exercising jurisdiction over the case to the extent that the bankruptcy case would concern the assets and affairs of the pending Virginia state court receivership proceedings for Reciprocal of America and The Reciprocal Group.

On November 24, 2003, General Reinsurance Corporation filed its motion that the court stay the § 304 proceeding pending a decision by the Judicial Panel on Multidistrict Litigation or in the alternative transfer the case or abstain from exercising jurisdiction over the petition. On December 1, 2003, the deputy receivers appointed in Tennessee for Doctors Insurance Reciprocal, American National Lawyers Insurance Reciprocal, and The Reciprocal Alliance (the Tennessee receivers) filed a motion asking the court to dismiss the § 304 petition or in the alternative to

abstain from exercising jurisdiction over the petition. The Tennessee receivers also request that they be allowed to join in the motion to dismiss or abstain filed by the Virginia receiver. At hearing on December 12, 2003, the court heard argument from the various parties on the motions. Following hearing on December 12, 2003, the court ruled from the bench that the dismissal and mandatory abstention portions of the receivers' motions would be denied and that the stay and transfer portions of the General Reinsurance motion would be denied. The court took the issue of discretionary abstention under advisement.

### *Findings of Fact*

First Virginia Reinsurance, Ltd. is a company organized under the laws of Bermuda and licensed under the Bermuda Insurance Act 1978 to write reinsurance business. Before the commencement of its insolvency proceeding in Bermuda, FVR provided reinsurance of direct errors and omissions (malpractice) insurance for health care providers, lawyers, and law firms.

Before its insolvency proceeding in Bermuda, FVR provided reinsurance to General Reinsurance for a portion of the risk that General Reinsurance had reinsured for Reciprocal of America (ROA), a Virginia company. ROA in turn reinsured the risk of three Tennessee entities, Doctors Insurance Reciprocal, American National Lawyers Reciprocal, and The Reciprocal Alliance (collectively, the Tennessee Reciprocals).

On January 29, 2003, at the request of the Virginia State Corporation Commission (the SCC), the Circuit Court for the City of Richmond entered an order appointing Alfred W. Gross, the Virginia Commissioner of Insurance, as deputy receiver for ROA and The Reciprocal Group,

a related Virginia corporation that functioned as ROA's attorney in fact and conducted its day-to-day business. The January 23, 2003, order also appointed Melvin J. Dillon as a special deputy receiver. Pursuant to the January 23, 2003, order, the Virginia receiver succeeded to the interests of ROA and acquired title to its assets and liabilities. Shortly thereafter, the Tennessee Reciprocals were placed into receivership in Tennessee.

Soon after the foregoing receiverships were commenced, various plaintiffs began to file class action litigation in various jurisdictions, alleging that ROA, the Tennessee Reciprocals, FVR, ROA's auditors, and a number of related individuals had engaged in conspiracy and fraud and had violated the federal RICO statutes. FVR has been named as a defendant in two class actions in the U.S. District Court for the Middle District of Alabama, one in the U.S. District Court for the Western District of Tennessee, one in the U.S. District Court for the Central District of Illinois, and one in the Jefferson County Circuit Court in Louisville, Kentucky. The Federal Judicial Panel on Multidistrict Litigation has consolidated the Tennessee and Alabama cases for pre-trial purposes in the Western District of Tennessee. These actions are currently stayed against First Virginia Reinsurance, Ltd. by this court's TRO. Petitioners contend these actions should remain stayed during the pendency of this case.

At the December 12th hearing, counsel for the Virginia receiver, the only party to have filed an answer to the petition, indicated he did not contest the injunctive relief sought by petitioners. Both written and oral argument for the Tennessee receivers were centered around the request for turnover of the trust funds. The request of General Reinsurance for a stay was denied from the bench.

On October 10, 2003, FVR submitted a petition to the Supreme Court of Bermuda to wind up its affairs. On October 13, 2003, that court appointed Malcolm L. Butterfield and Michael W. Morrison as Joint Provisional Liquidators with powers to "continue the business of the Company under the supervision of [the Supreme] Court in so far as is necessary to preserve the value of the Company," to "obtain such information as is necessary to locate, protect, secure, take possession of, collect the assets and determine the liabilities of the Company," to "terminate, complete or perfect as advised any contracts or transactions," to do any act or give any authorization "in respect of any act which ... is required to be done by a liquidator or to be authorized by him," and to "provide written reports to [the] Court from time to time and as [the] Court may otherwise request on the progress of the Provisional liquidation." *In re First Virginia Reinsurance, Ltd.* (Sup.Ct.Berm. October 13, 2003). The Supreme Court of Bermuda also specifically authorized petitioners to apply to a United States Bankruptcy Court for relief under 11 U.S.C. § 304 as petitioners might "deem necessary or appropriate to assist in the carrying out of their functions." *Id.*

The turnover dispute between petitioners and the Virginia receiver relates to a January 1, 2002, trust agreement by and among FVR, ROA and Wachovia Bank, National Association. Petitioners contend that the trust agreement provided for a trust account at Wachovia to hold funds to secure FVR's obligations to ROA under a reinsurance agreement executed by and between FVR and ROA in 2002. Petitioners further allege that in April 2003, the Virginia receiver withdrew approximately $57,000,000.00 from the trust account in violation of the agreements between FVR and ROA. Petitioners additionally contend

that at least approximately $30,000,000.00 of the approximately $57,000,000.00 withdrawn by the Virginia receiver is not subject to a lien in favor of the Virginia receiver but is property of FVR's insolvency estate under Bermuda law and should be returned to FVR's estate.

The Virginia receiver disagrees with petitioners' interpretation of the parties' agreements and contends that he properly obtained possession of the trust funds in April 2003 in accordance with ROA's rights under the parties' agreements and applicable Virginia law. The Virginia receiver further disputes petitioners' right to turnover of the trust funds in the possession of the Virginia receiver.

It is not necessary at this time for the court to resolve the factual questions surrounding the trust agreement because the Virginia receiver bases his motion on "the pleadings and memorandum of petitioners and assumes, for the purposes of deciding its merits, that the factual assertions of petitioners are true." The Virginia receiver states in his motion that "[f]actual discovery, therefore, is not necessary to the determination of this Court's jurisdiction" because jurisdiction would not be proper even if all of the factual assertions of petitioners are true.

Before the commencement of FVR's liquidation proceeding in Bermuda, FVR sought SCC review of the Virginia receiver's April 2003 withdrawal of the trust funds. That proceeding was pending at the time petitioners filed their petition in this court, and that proceeding is now part of the litigation affected by the stay contained in this court's TRO.

### Conclusions of Law

This court has jurisdiction over the petition and pending motions pursuant to 28 U.S.C. §§ 157 and 1334 (Supp.2003). Venue properly lies in this District pursuant to 28 U.S.C. § 1410 (2000).

■ In their petition, petitioners seek, among other things, to enjoin any affirmative claims that might be brought against property of FVR's estate before the SCC. Petitioners further seek a nationwide injunction to enjoin the commencement or continuation of similar actions in various other jurisdictions. In this circumstance, petitioners need not file multiple cases in every jurisdiction where a stay is sought. Instead, bankruptcy courts hearing cases under 11 U.S.C. § 304 may grant nationwide injunctions because the policy goals of § 304, including comity and judicial economy, are best served by permitting the case to be filed where the principal U.S. assets of the company are located. *See In re Bd. of Dir. of Hopewell Int'l Ins. Ltd.,* 238 B.R. 25, 44–45 (Bankr.S.D.N.Y. 1999), *aff'd,* 275 B.R. 699 (S.D.N.Y.2002); *In re Evans,* 177 B.R. 193, 196–97 (Bankr. S.D.N.Y.1995); *In re Saleh,* 175 B.R. 422, 425–26 (Bankr.S.D.Fla.1994).

Similarly, petitioners further seek the turnover of certain assets alleged improperly seized and held by the Virginia receiver in Virginia. Venue for the turnover request is proper in this court pursuant to 28 U.S.C. § 1410(b). *Hopewell,* 238 B.R. at 44 (venue of ancillary case proper under § 1410(b), which allows a § 304 case in which turnover is sought to be filed in the district in which the property is found).

### EFFECT OF McCARRAN–FERGUSON ACT

By separate order entered contemporaneously with this opinion, this court has denied the Virginia receiver's motion that the court dismiss petitioners' ancillary petition because the relief requested in the petition is allegedly reverse-preempted by Virginia's insurance insolvency statutes pursuant to the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. The Fourth Cir-

cuit has addressed this issue recently in *Gross v. Weingarten*, 217 F.3d 208 (4th Cir.2000). In *Weingarten*, the district court had held that the order of the Commissioner of Insurance asserting exclusive jurisdiction over claims against the insolvent insurer had divested the federal courts of subject matter jurisdiction. *Id.* at 211. The Fourth Circuit reversed, holding that "[i]n determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to the acts of states which have no power to enlarge or contract the federal jurisdiction." *Id.* at 220–21 (quoting *Markham v. City of Newport News*, 292 F.2d 711, 713 (4th Cir.1961)).

The Virginia receiver also argues that the McCarran–Ferguson Act divested the federal courts of jurisdiction. McCarran–Ferguson provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . . unless such Act specifically relates to the business of insurance. . . ." 15 U.S.C. § 1012(b) (2000). Specifically, the Virginia receiver asserts that Va.Code Ann. § 38.2–1508 (Michie 2002), which confers on the SCC jurisdiction over "[a]ll further proceedings in connection with the rehabilitation or liquidation" of an insolvent insurer, establishes an exclusive state court forum. A similar argument was rejected by the Fourth Circuit in *Weingarten*. In holding that the exercise of federal jurisdiction was proper, the Fourth Circuit remarked that it was "skeptical that Congress intended, through the McCarran–Ferguson Act, to remove federal jurisdiction over every claim that might be asserted against an insurer in state insolvency proceedings." 217 F.3d at

222. In addition, the court pointed out that such an application of McCarran–Ferguson could operate to divest federal diversity jurisdiction, which would have the effect of leaving many plaintiffs with no forum in which to assert their federal rights. *Id.*

In light of the Fourth Circuit's analysis in *Weingarten*, this court has jurisdiction to hear the claim of the Virginia receiver. The McCarran–Ferguson Act does not divest this court of that jurisdiction.

ABSTENTION

The Virginia receiver further argues that this court must abstain from exercising jurisdiction, either under the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) or under the permissive abstention provision of 28 U.S.C. § 1334(c)(1).[1] The court will address each theory.

a. **Mandatory Abstention**

28 U.S.C. § 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*Id.* (emphasis added.)

■ Following the terms of § 1334(c)(2), the bankruptcy courts in this district have held that the party requesting mandatory abstention under

---

**1.** At hearing on December 12, 2003, the court ruled from the bench that the motion would be denied as to mandatory abstention.

§ 1334(c)(2) must prove each of six required elements:

1. A party to the proceeding must file a timely motion to abstain;

2. The proceeding must be based on state law claims;

3. The proceeding must be a non-core, "related to" proceeding;

4. There must not be any basis for federal court jurisdiction other than section 1334;

5. A parallel action must have been commenced in state court; and,

6. The state court action must be susceptible to timely adjudication.

*See, e.g., Shaia v. Brown (In re Brown),* 1996 WL 757100, at *1 (Bankr.E.D.Va. Dec.5, 1996); *Seven Springs, Inc. v. Abramson (In re Seven Springs, Inc.),* 148 B.R. 815, 817 (Bankr.E.D.Va.1992).

 In determining whether to abstain under § 1334(c)(2), if the court finds that any element of the test set out above has not been satisfied, then it must find that mandatory abstention is improper. In this case, the Virginia receiver cannot show that a federal court would not have jurisdiction outside of the terms of 28 U.S.C. § 1334. Diversity jurisdiction over this matter would be proper in the federal district court pursuant to 28 U.S.C. § 1332(a)(2) (Supp.2003), because the amount in controversy is in excess of $75,000 and the matter is between citizens of a state and citizens or subjects of a foreign state. This leaves the fourth element of the test outlined above unsatisfied, and mandatory abstention is not required.[2]

### b. Discretionary Abstention

 The Virginia receiver also argues that discretionary abstention is proper in

this case. Discretionary abstention is available to the court under the provisions of 28 U.S.C. § 1334(c)(1), which states that nothing in § 1334 prevents the court from abstaining "in the interest of justice, or in the interest of comity with State courts or respect for State law...." The general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Neufeld v. City of Baltimore,* 964 F.2d 347, 349 (4th Cir. 1992).

The Virginia receiver raises two abstention doctrines in his motion to abstain, the *Burford* doctrine and the *Colorado River* doctrine. The court finds that it would not be appropriate to abstain under either of these doctrines.

 The *Burford* doctrine is derived from *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* test has been more recently applied in *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). In that case, the Supreme Court held that abstention was proper when the exercise of federal jurisdiction would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern" or when exercising jurisdiction would require the court to address "difficult questions of state law bearing on important policy problems of substantial public import." *Id.* at 361, 109 S.Ct. 2506.

 In applying the *Burford* doctrine in the context of the insolvent insurer in re-

---

**2.** The court, having decided the issue of mandatory abstention based upon the "federal court jurisdiction" test of *Seven Springs,* does

not reach the issue of whether the request for turnover constitutes a core or non-core proceeding under 28 U.S.C. § 157.

ceivership, analysis of the first *Burford* factor does not lead the court to the conclusion that abstention would be proper in this case. The relevant "matter of substantial public concern" at issue is that the assets of the insolvent insurer be distributed properly, in accordance with the relative rights of all parties. Whether this court or a state court decides the relative claims to the funds of the trust, those rights will be adjudicated efficiently, effectively and nonprejudicially. Adjudication of the claims to the trust funds is merely a determination of one class of claims in the liquidation and is but one piece of information in the liquidation of the insolvent insurer, a process over which the Virginia State Corporation SCC will still preside.

The second *Burford* factor, the evaluation of whether the exercise of jurisdiction would require the court to address state law questions of important policy problems, is easily resolved. The court is of the opinion that a determination as to which entities have claims upon a corpus of funds does not raise questions of important state policy but rather is a question of contract law. Admittedly, this question of contract law arises amidst complex facts of insurance and reinsurance, but at its heart it is a question of contract law with no implications as to vital state policy.

■ A more relevant abstention doctrine is the *Colorado River* abstention doctrine. That case has consistently been cited for the following standard, which comprises a four-part test:

> A federal district court may decline to exercise its jurisdiction because of paral-

lel state-court litigation only in exceptional circumstances; only the clearest of justifications will warrant dismissal. The decision whether to stay or dismiss a federal action on rounds of wise judicial administration does not rest on a mechanical checklist, but on a careful balancing of the important factors (which court first assumed jurisdiction over property involved in the litigation, inconvenience of the federal forum, avoidance of piecemeal litigation, and the order in which the concurrent forums obtained jurisdiction) relevant to the decision as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 2, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (*citing Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818–819, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

■ With respect to the first factor, that of which court first assumed jurisdiction over the property at issue, the answer is undoubtedly the Virginia SCC.[3] With regard to the second factor, the inconvenience of the federal forum, litigation in either state or federal forum would still result in the dispute being litigated in Richmond, Virginia, so that factor is clearly not dispositive of the issue. With regard to the third factor, the avoidance of piecemeal litigation, the parties' claims must be litigated in some forum; regardless of whether the claims are litigated in the state forum or the federal one, no extra burden on the court system is caused. No other litigation is affected by

---

**3.** In this case, the Virginia receiver was appointed in January, 2003. The trust funds at issue were withdrawn in April of 2003. FVR filed its petition for winding up with the Supreme Court of Bermuda in October of 2003. FVR filed its petition for Review with the Commission on September 26, 2003, allegedly in response from a directive issued by the Virginia receiver that a failure to file claims "will result in a waiver of your appeal, and the Virginia receiver's decision as to your claim or any other matter will become final and non-appealable."

this issue. With regard to the fourth factor, the order in which the forums obtained jurisdiction, the court notes that the SCC obtained jurisdiction at least eight months prior to the filing of the Bermuda petition. This court cannot speculate from the pleadings as to why the state, federal and international pleadings were filed when they were, but the order of filing does not lead to the conclusion that a state interest has been compromised. Even if petitioners hoped to gain a federal forum by filing their § 304 petition, there is nothing impermissible in seeking a federal forum when diversity jurisdiction exists.

 The final consideration under *Colorado River* and *Moses Cone* is whether the concurrent state proceedings are adequate to protect the federal plaintiff's rights. Making no determination that the Virginia system in place for the liquidation of insurance companies is in any way deficient, the court believes that the concurrent state proceedings do not protect the right of the federal plaintiff to diversity jurisdiction. Diversity jurisdiction exists to give all parties access to a neutral forum and is a right that must be protected. *See Weingarten*, 217 F.3d at 222. In this case, the Virginia receiver is an agent of the SCC, which acts as both the receiver for the insolvent insurance company and as the court of record for all actions of the receiver and Virginia receiver. Under this structure, the court has been pointed to no provisions for the separation of functions between the SCC acting as receiver and the SCC sitting as a court of record. This on its face does not suggest that level of impartiality and evenhandedness required by the requirements of federal diversity jurisdiction. Even assuming that the state system acts without any bias whatsoever, the structure of the system is such that the possibility exists for discrimination against the out-of-state litigant. This is not con-

sistent with the mandates of the federal provision of diversity jurisdiction.

In light of the above and of the Supreme Court's warning that the balance must be weighted heavily against abstention, this court will not abstain from exercising jurisdiction.

Separate orders will be entered denying the motions.